IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**DEREN FLESHER, DDS**                                                                      **PLAINTIFF**

**v.**                                      **Case No**.  **3:26-cv-111-DPM-ERE**

**GUIDED PRACTICE SOLUTIONS**
**DENTAL LLC**                                                                              **DEFENDANT**

## <u>ORDER</u>

Before the Court is a motion to compel arbitration and stay the case by Defendant Guided Practice Solutions: Dental, LLC ("GPS"). *Docs. 11, 12*. Plaintiff Deren Flesher, DDS ("Dr. Flesher") has filed a response opposing the motion. *Docs. 15, 16*. For reasons that follow, GPS's motion is granted.[1]

---

[1]  United States District Judge D.P. Marshall Jr. referred this case to me with directions to "handle all pretrial matters, and non-dispositive motions, including a recommended disposition on any dispositive motion." *Doc. 2*. The distinction between non-dispositive and dispositive affects how I may act on a motion (by written order or recommended disposition) and the procedure for challenging my decision. See Fed. R. Civ. P. 72.

The majority view, which I will follow, is that that a motion to compel arbitration and stay the case is not dispositive of a claim or defense and should therefore be decided in a written order. See *Patton v. Johnson*, 915 F.3d 827, 832 (1st Cir. 2019) (concluding that Magistrate Judge erred by treating a motion to compel arbitration as a dispositive motion); *Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014) (holding that ruling on a motion to compel arbitration "does not dispose of the case, or any claim or defense found therein" and orders granting such a motion "merely suspend the litigation while orders denying it continue the underlying litigation"); *Cullen v. Hall Auto., LLC*, No. 2:21cv47, 2022 WL 1262549, at *2 (E.D. Va. Apr. 28, 2022) (agreeing with "the weight of the relevant case law" holding that a motion to compel arbitration is non-dispositive); *Schmitt v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, No. 8:21CV11, 2021 WL 4810921, at *12 (D. Neb. Oct. 15, 2021) (citing cases and adopting the majority view that motions to arbitrate are non-dispositive and can be ruled on by a magistrate judge).

## I.      Background

The parties are the sole members of GPS Flesher LLC (the "Company"). GPS is the managing and 66% majority member, holding 660 membership units, and Dr. Flesher is a 34% member, holding 340 membership units. The Company is governed by a September 1, 2023 Operating Agreement. *Doc. 1 at 11-46*.

Schedule B of the Operating Agreement is a Put Option Agreement, which gives Dr. Flesher the right, upon the occurrence of specified conditions and written notice to GPS, to sell GPS up to 75% of his membership units at $4,970 per unit. *Id. at 42-43*. The Put Option Agreement requires GPS to purchase Dr. Flesher's units within 30 days after receiving his written notice.

The specified conditions for exercising Dr. Flesher's put option occurred, and on March 1, 2026, he notified GPS in writing that he elected to sell GPS 75% of his membership units. *Id. at 47*. In a March 29 email, GPS informed Dr. Flesher that due to a "timing issue" it was unable to fund the transaction by March 31 but offered to compensate Dr. Flesher for the delay by paying interest. *Id. at 50*.

On April 10, 2026, Dr. Flesher initiated this lawsuit with a complaint for specific performance, asking the Court to compel GPS to purchase 75% of his shares at the agreed price, plus interest. *Id. at 1*.

On June 4, 2026, GPS filed a motion to compel arbitration and stay the case, pursuant to Section 13.13 of the Operating Agreement, which sets out the following, two-part dispute resolution procedure:

### 13.13  Dispute Resolution

(a)    *Confidential Mediation*. The parties hereto agree that any dispute or controversy arising out of, or in any way relating to this Agreement that cannot be resolved within sixty (60) days of written notification by one Disputing Party to another that a dispute has occurred shall be initially redressed by confidential mediation. The mediation shall be scheduled with or without the involvement of legal counsel at a mutually agreed upon location in Jonesboro, Arkansas, and shall take place within thirty (30) days of notice of said mediation being sent to the Disputing Parties. The cost of the mediation shall be borne equally by the Disputing Parties, and such mediation shall engage a sole mediator selected from the panel of mediators of the AAA. The Disputing Parties shall attempt in good faith to agree upon a mediator, and if there is no agreement, the AAA shall select the mediator. The Disputing Parties agree to keep the proceedings of the mediation, all events leading up to the mediation and the outcome of the mediation confidential. Should mediation fail to resolve the Disputing Parties' differences, the Disputing Parties agree to submit their dispute to confidential arbitration in accordance with the procedures set forth in Section 13.13(b).

(b)    *Confidential Binding Arbitration*. Should the confidential mediation procedures set forth in Section 13.13(a) fail to resolve the Disputing Parties' differences, *the Disputing Parties agree to submit their dispute to confidential arbitration in accordance with the commercial rules of the AAA then in effect*. The arbitration shall be held in the AAA office in or nearest to Jonesboro, Arkansas before a sole arbitrator agreed to by the Disputing Parties and selected from the panel of arbitrators of the AAA. The Disputing Parties shall attempt in good faith to agree upon an arbitrator, and if there is no agreement, then the AAA shall select the arbitrator. The parties agree to keep the proceedings of the arbitration, all events leading up to the arbitration and the outcome of the arbitration confidential. *It is the intent of the*

*parties hereto that this Section 13(b) provides a broad arbitration clause and is intended to include claims and causes of action regarding, arising out of, or relating to this Agreement, whether arising in contract, tort, statute, regulation, common law or otherwise. The parties' submission and agreement to arbitrate shall be specifically enforceable, and the judgment of the arbitrator granting an award to a Disputing Party may be entered in any court having jurisdiction thereof.* Each Disputing Party shall bear its own costs and attorneys' fees and the arbitrator shall have no authority to award to any Disputing Party its attorneys' fees or costs under this Agreement or applicable state law. All mediation and/or arbitration proceedings shall take place in or as near as possible to Jonesboro, Arkansas.

*Doc. 1 at 38* (emphasis added).

Dr. Flesher does not dispute the validity of the Operating Agreement or the Dispute Resolution provision, but he contends that when read as a whole, the Operating Agreement includes an "arbitration carveout" for actions seeking specific performance. *Doc. 16 at 4*. Dr. Flesher points to Section 13.2 of the Operating Agreement, which states:

**13.12 Specific Performance**. Each Member acknowledges and agrees that the other Members would be irreparably damaged if any provision of this Agreement is not performed in accordance with its specific terms or is otherwise breached. Accordingly, each Member agrees that the other Members will be entitled to injunctive relief to prevent breaches of the provisions in this Agreement and to specifically enforce this Agreement and its terms and provisions in any action instituted in any court of the United States or any state thereof having jurisdiction over the Members, subject to Sections 13.2 and 13.11, in addition to any other remedy to which such Member may be entitled, at law or equity.

4

*Doc. 1 at 38.* In addition, Section 9.4 of the Operating Agreement provides that any obligation set forth in Article IX, which incorporates the Put Option Agreement, is enforceable by specific performance. *Id. at 29.*

GPS argues that the Operating Agreement's provisions for specific performance do not permit Dr. Flesher to avoid arbitration by initiating a suit for specific performance. *Doc. 12 at 8.* Instead, GPS argues, Dr. Flesher can seek specific performance in arbitration and enforce any specific performance order in court as provided in the Dispute Resolution provision.[2]

## II. Discussion

When deciding a motion to compel arbitration, a district court's inquiry is limited to the "gateway" questions of arbitrability: (1) whether a valid agreement to arbitrate exists between the parties[3]; and (2) whether the dispute presented falls within the scope of the arbitration agreement.[4] These questions, however, may be

---

[2] Additionally, GPS states that it intends to assert counterclaims for breach of the Operating Agreement, breach of fiduciary duty, and conversion, which at minimum will form the basis for an offset against Flesher's claim for payment of the put option. GPS contends that if the Court retained jurisdiction over this case, it would clearly violate the intent of the Dispute Resolution provision. *Doc. 12 at 10.*

[3] This question is governed by state law, *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731 (8th Cir. 2009), and the Operating Agreement provides that it shall be interpreted according to Delaware law. *Doc. 1 at 36.* In this case, however, it is undisputed that a valid agreement to arbitrate exists between the parties.

[4] "[I]f an enforceable agreement exists, the federal substantive law of arbitrability governs whether the litigants' dispute falls within the scope of the arbitration agreement." *Donaldson*, 581 F.3d 731 (8th Cir. 2009). GPS correctly notes that if an arbitration clause is broad, the liberal federal policy favoring arbitration agreements "requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the

delegated to the arbitrator to decide, provided that the parties clearly and unmistakably express the intent to do so. *Fallo v. High-Tech Institute*, 559 F.3d 874, 877 (8th Cir. 2009) (citations omitted).

The majority of jurisdictions, including the Eighth Circuit, have held that incorporation of the rules of the American Arbitration Association ("AAA") in a contract requiring arbitration provides clear and unmistakable evidence that the parties intended for the arbitrator to decide threshold questions of arbitrability. *Fallo*, 559 F.3d at 880. Here, the Dispute Resolution provision provides that if confidential mediation fails to resolve the parties' differences, the parties agree to submit their dispute to arbitration in accordance with the commercial rules of the AAA then in effect. Rule 7(a) of the AAA rules provides:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court.

> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

---

arbitration provision." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 874 (8th Cir. 2018) (citations omitted).

AAA Com. Arb. Rules & Mediation Procs. (amended and effective Sept. 1, 2022), *available at* https://adr.org/media/qielmf0g/2025_commercialrules_web.pdf.

When, as here, a valid arbitration agreement exists and that agreement delegates the arbitrability issue to an arbitrator, a district court may not decide the arbitrability issue. *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.). Accordingly, the claims in this case and the gateway issue of arbitrability must be referred to mediation and arbitration in accordance with the parties' agreement. Rather than stay the case, I will direct the Clerk to administratively close this case, subject to the parties' right to move to reopen following arbitration.[5]

## III.   Conclusion

IT IS THEREFORE ORDERED that:

(1)     Defendant's motion to compel arbitration (*Doc. 11*) is GRANTED. The parties are directed to participate in mediation and arbitration as required under the Dispute Resolution clause of their Operating Agreement.

---

[5] Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until [the] arbitration" has concluded. 9 U.S.C. § 3. Administratively closing this case for reporting purposes, subject to the parties' right to move to reopen the case when arbitration has concluded, has the same effect as a stay.

(2)     The Clerk of Court is directed to administratively close this case for reporting purposes, subject to the right of the parties to move to reopen the case when arbitration has concluded.

Dated 26 June 2026.

_____
UNITED STATES MAGISTRATE JUDGE